UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

TRIA LALANI SPARKS,

        Debtor.

Case No. 13-02980-swd
Hon. Scott W. Dales
Chapter 13

_____/

CAPITOL INDEMNITY CORPORATION,

        Plaintiff,

Adv. Pro. No. 13-80200

v.

TRIA LALANI SPARKS, f/k/a TRIA HUNT,

        Defendant.

_____/

AMENDED[1] MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

This dispute traces its roots back to a judgment from the State of Wisconsin entered against the Debtor-Defendant (Tria Sparks) in 2004. Two bankruptcy courts declared Ms. Sparks's liability represented by the Wisconsin judgment excepted from discharge under 11 U.S.C. § 523(a)(4) in two separate bankruptcy proceedings -- the first in the Eastern District of Wisconsin, and the second, here in the Western District of Michigan.

The plaintiff, Capitol Indemnity Corporation ("Capitol"), now seeks to enforce its rights as a judgment creditor, first by garnishing Ms. Sparks's wages and second by encumbering her interests in real estate in two Michigan counties.

---

[1] Amended to correct the spelling of the Debtor Defendant's last name on the court's initiative under Fed. R. Civ. P. 60(a).

A bit of background and procedural history, drawn from the docket and complaint, which Ms. Sparks did not oppose,[2] will help in understanding why this court is not in a position to assist Capitol in enforcing its rights.

Ms. Sparks and her then-husband were parties to an indemnity agreement with Capitol, who sought indemnification after their company misused funds related to a construction project in Wisconsin. Capitol sought and obtained a money judgment in the amount of $117,268.84 from the circuit court in Dane County, Wisconsin, on or about April 30, 2004 (the "Dane County Judgment").

Ms. Sparks and her husband, then residing in Wisconsin, filed for relief in the United States Bankruptcy Court for the Eastern District of Wisconsin. That court, however, declared that the debt represented by the Dane County Judgment was excepted from discharge, entering a somewhat equivocal judgment, apparently granting both declaratory and monetary relief:

> It is ordered and adjudged that a non-dischargeable Default judgment is hereby entered in favor of Plaintiff Capitol Indemnity Corporation . . . and against Defendants Ricky Hunt, Sr. and Tria L. Hunt . . . jointly and severally, in the amount previously awarded in Dane County Circuit Court, Case No. 04-CV-0449. This Dane County judgment is entitled to claim preclusion as to amount and is excepted from discharge pursuant to Section 523(a)(4) of the Bankruptcy Code.

Capitol Indemnity Corporation's Complaint for Determination of Non-Dischargeability of Debt (ECF No. 1, the "Complaint") at Exh. H (the "Wisconsin Bankruptcy Court Judgment"). In other words, the Wisconsin Bankruptcy Court Judgment had a double

---

[2] Fed. R. Civ. P. 8(b)6) (allegations not denied are admitted) (applicable under Fed. R. Bankr. P. 7008). The Federal Rules of Bankruptcy Procedure are set forth in Fed. R. Bankr. P. 1001 *et seq.* and the Federal Rules of Civil Procedure are set forth in Fed. R. Civ. P. 1 *et seq.* In the text of this opinion the court will refer to any rule simply as "Rule __," relying on the numbering conventions within each ruleset to distinguish the references.

aspect -- it declared the Dane County Judgment excepted from discharge (i.e., declaratory relief), and imposed joint and several monetary obligations in the amount of the Dane County judgment under preclusion principles.

Thereafter, Ms. Sparks moved to Michigan where on July 12, 2012, Capitol domesticated the Wisconsin Bankruptcy Court Judgment -- not the Dane County Judgment -- in the 9th Circuit Court (Kalamazoo County, Michigan), pursuant to the Uniform Enforcement of Foreign Judgments Act, M.C.L. §§ 691.1171 *et seq.* *See* Complaint at Exh. I.

Likely in response to Capitol's enforcement activity, Ms. Sparks again sought protection under the Bankruptcy Code, this time in the Western District of Michigan, and Capitol again sought to except her debt from discharge by filing a complaint under 11 U.S.C. § 523(c).

Ms. Sparks did not answer the complaint, and this court excepted her debt from discharge nearly ten years ago by entering the Default Declaratory Judgment Against Defendant Tria Lalani Sparks f/k/a Tria Hunt (ECF No. 17, the "Default Judgment").[3]

The court entered the Default Judgment after a hearing on Capitol's Rule 55 motion in which the court explained that it would only grant declaratory relief -- not a money judgment -- because Capitol had already obtained a money judgment from the Dane County court in Wisconsin. *See* Audio Recording of Telephone Hearing Held Nov. 18, 2023 (ECF

---

[3] Capitol sought the second non-dischargeability determination as "belt and suspenders," unsure whether the Wisconsin Bankruptcy Court Judgment, without more, would protect its interests despite the second bankruptcy. Indeed, the text of § 523(c) (which imposes an affirmative obligation to commence litigation to except a debt from discharge under § 523(a)(2), (4), or (6)) is somewhat in tension with the negative implication of § 523(b) (which suggests that some non-dischargeability determinations in a prior case will apply in a later case, but several exceptions depending on timing or circumstances, may not). *See TIA Corp. v. Bridges (In re Bridges)*, 583 B.R. 696, 698-99 (Bankr. W.D. Mich. 2018) (describing tension). For this reason, the court did not hesitate to enter the Default Judgment.

No. 28).  In obedience to the court's oral ruling, Capitol prepared (and the court entered) the Default Judgment which provides as follows:

> [T]he money judgment entered in Wisconsin's Dane County Circuit Court in the amount of $113,556.00, having been previously determined to be exempt from discharge by the United States Bankruptcy Court for the Eastern District of Wisconsin and later domesticated in Michigan, is exempt from discharge in Defendant's present Chapter 13 proceeding.

Default Judgment at p. 2.  Nowhere within the Default Judgment does this court order Ms. Sparks to pay anything -- instead it simply declares the Dane County Judgment non-dischargeable.[4]

The docket remained dormant for nearly ten years until March when, at Capitol's request, the court granted an *ex parte* motion to renew the Default Judgment under M.C.L. § 600.5809(3).

Earlier this month, after renewing the Default Judgment, Capitol filed with this court a Request and Writ for Garnishment (Periodic) (ECF No. 24, the "Request"), and proposed Notices of Judgment Lien (ECF Nos. 25 and 26, the "Lien Notices"), both pursuant to Rule 69.  The Request seeks to garnish Ms. Sparks's wages, and the Lien Notices seek to encumber real estate in Wayne and Monroe counties, in Michigan.

Given the declaratory nature of the Default Judgment, and the confusing relationships between the three state and federal judgments at issue,[5] the court conducted

---

[4] It would be more precise to say that neither of Ms. Sparks's two discharges voided the Dane County Judgment under 11 U.S.C. § 524(a)(1) because the underlying debt to Capitol embodied in that judgment was excepted from discharge in both bankruptcy proceedings.

[5] The confusion is evident in the language of the Wisconsin Bankruptcy Court Judgment, which Capitol domesticated in Michigan, the renewal and proposed enforcement of the Default Judgment as a money judgment, and the references in the Request and Lien Notices to "4/29/2004" as the date Capitol received the judgment to be enforced -- this is the approximate date of the Dane County Judgment, not this court's Default Judgment.

a telephone hearing to consider Capitol's proposed enforcement efforts.  At the hearing, held on July 14, 2023, Capitol appeared through counsel; Ms. Sparks, who remains in default, appeared *pro se*.

During the hearing, counsel explained that he regards this court as the "least bad option" for collecting the debt represented by the various judgments, and that because the Default Judgment refers to a dollar figure for the debt, it is effectively a money judgment, albeit one with a declaratory aspect.  For her part, Ms. Sparks expressed surprise that after nearly twenty years, and after she completed her payments under her chapter 13 plan, and earned two discharges, she must still face a debt she attributes mostly to her ex-husband. The court took the matter under advisement at the end of the hearing.

Having considered the docket, the proposed enforcement measures, and applicable law, the court will deny the Request and invalidate the Lien Notices, largely because Rule 69 applies to the execution of money judgments and the Default Judgment is not a money judgment.

Federal courts follow the forum state's execution procedures when they enforce most federal judgments, as Rule 69 instructs.  That rule provides in relevant part as follows:

> Money Judgment; Applicable Procedure. *A money judgment* is enforced by a writ of *execution*, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or *execution*—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1) (emphasis added).  Consistent with this rule, and as the court made clear at the hearing on Capitol's motion for default judgment under Rule 55, the court has no basis for enforcing the Default Judgment through procedures governing execution, including the garnishment of Ms. Sparks's wages, because its judgment provides only

declaratory relief, not relief that Capitol can satisfy through "execution"-- the subject of Rule 69.  The Dane County Judgment, on the other hand, and arguably the Wisconsin Bankruptcy Court Judgment, too, impose payment obligations that are amenable to execution.  A declaratory judgment, in contrast, is of a different ilk, and cannot be satisfied through garnishment.

For similar reasons, the procedure governing judgment liens under M.C.L. §§ 600.2801 *et seq*., does not apply to the Default Judgment, as plainly appears from the provision requiring the certification of the clerk of the court that entered the judgment.  The statute, among other things, requires the clerk to certify "[t]he current balance due on the judgment." M.C.L. § 600.2805(1)(d).  There is, however, no balance due on the declaratory Default Judgment.  For this reason, the Clerk of our court will be unable to make the statutory certification regarding the only judgment entered in this matter in her court -- the Default Judgment.  The Lien Notices, therefore, cannot be certified and are therefore without effect.  Relief based on a judgment lien must depend on a money judgment (not the Default Judgment), and in this case must come from a court other than this one.

To close the loop given the declaratory nature of the Default Judgment, Rule 69 tells us that "a federal statute governs to the extent it applies," and given the declaratory nature of the Default Judgment, the rule points to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  The enforcement that Capitol seeks from this court through garnishment or imposition of judgment liens under Michigan law is not "necessary or proper relief based on a declaratory judgment or decree" such as the Default Judgment. *See* 28 U.S.C. § 2202.  Instead, as the court stated when rendering the Default Judgment,

satisfaction of the underlying Dane County Judgment (or the now-domesticated Wisconsin Bankruptcy Court Judgment) is a matter for the state courts.

The careful reader may rightly wonder why the court renewed the Default Judgment a few months back at Capitol's request, given the nature of the relief embodied in the judgment. It is not at all clear that renewing a declaratory judgment is necessary under M.C.L. § 600.5809 because, as the court explained at the hearing in 2013 on Capitol's motion for default judgment and again today, the Default Judgment itself does not create a right of action to "enforce noncontractual money obligations," the subject of the limitation period prescribed in that section. The judgment simply declares the nature of Ms. Sparks's debt. Nevertheless, if the court erred in renewing the Default Judgment, the error, made at the Plaintiff's invitation, was harmless and may be disregarded under Rule 9005.[6]

A creditor who comes to bankruptcy court armed with a prepetition judgment, and who seeks to except the debt represented by that judgment from discharge, would be well-advised, as Capitol was in this case, not to seek an additional money judgment from the bankruptcy court, but simply to seek a declaration that the debt embodied in the prepetition decree will survive the judgment debtor's discharge. If successful in excepting the debt from discharge, the creditor may enforce the original money judgment in the rendering court or domesticate any out-of-state or federal judgments if necessary under local law. *See, e.g.*, M.C.L. §§ 691.1171 *et seq.* (Uniform Enforcement of Foreign Judgments Act). This will avoid the inevitable confusion arising from the multiplication of judgments on a single claim, confusion about calculating post-judgment interest, confusion about which judgment to renew (if necessary), and confusion about enforcing a federal judgment as a

---

[6] The parties, however, should not mistake the court's renewal of the Default Judgment as renewal of any of the other judgments memorializing Ms. Sparks's debt.

money judgment.  *Richardson v. Younce (In re Nail),* Adv. No. 22-01379-SWD, 2023 WL 3909348, at *2 (Bankr. W.D. Mich. June 8, 2023) ("It is fair to say, as the court has previously suggested, that the state courts are better equipped to conduct post-judgment proceedings, with specific forms and expertise.").[7]  By limiting the relief in this matter to declaratory relief ten years ago, the court endeavored to minimize confusion and demonstrate respect for other tribunals.  By withholding post-judgment relief today, the court hews to those goals.

Capitol is free to seek enforcement from the courts of this state, either by enforcing the judgment it previously domesticated in Kalamazoo County, or domesticating the Dane County Judgment in Michigan, or seeking some other relief from a court other than this one, subject of course to whatever defenses Ms. Sparks may properly raise in that other forum.  The court's Default Judgment, however, is not the sort of judgment that can be satisfied through execution or "proceedings supplementary" within the meaning of Rule 69 given the limited relief awarded in response to the Complaint.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Request is DENIED and the Clerk shall make no certification with respect to the Lien Notices.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Scott

---

[7] Capitol's counsel highlighted the confusion during the telephone hearing, wondering aloud which judgment should serve as the basis for post-judgment interest, presumably because each sovereign has its own provision governing interest on the judgments of its courts, and each of the judgments at issue was entered on a different date based on complaints filed at different times. *Compare* 28 U.S.C. § 1961 *with* M.C.L. §§ 600.6013 and 600.6455 and Wisc. Stat. §§ 807.01(4), 814.04(4), and 815.05(8).  Calculating interest based on a single judgment with a single starting point obviously minimizes confusion.  Moreover, in explaining why he chose to collect the underlying debt in this court, counsel predicted that the state courts would be confused by the existence of the various judgments from the state and federal courts in Michigan and Wisconsin.

Mancinelli, Esq., and Tria Lalani Sparks (by U.S. Mail addressed to her at the last address reflected on her base case docket).

END OF ORDER

**IT IS SO ORDERED.**

**Dated July 17, 2023**



Scott W. Dales
United States Bankruptcy Judge